Morgan, J.,
¿assenting. The following article appeared in the issue of the New Orleans Times of the seventh August, 1869:
*220 “ Charge of Embezzlement. — An affidavit was yesterday made before A. Shelley, Second Justice of the Peace, by Edward Hickey, in which it is related that during the last year his letters, in pursuance of his instructions to his correspondents, had been directed to the care of J. M. Cass, grocer, who does business at 75 Poydras street, and such affidavit charges that said J. M. Cass, aided and abetted therein by Albert Cass, his son, ‘did, in or about the month of July, contrary to the statutes, and in violation of the peace and dignity of the State, tear, mutilate and break open a certain packet addressed as aforesaid to. affiant, and did therefrom extract, take and appropriate, embezzle, steal and carry away the sum of $100 in lawful money, therein contained, and that the same have never been received by affiant, owing to such felonious embezzling and stealing thereof by said accused.’
“ It is further related that said envelope contained an unsigned deed of sale importing that for said sum of $100 said Edward Hickey and his wife conveyed by such presents certain lands situated in Missouri to John Holland, of Cincinnati, .whose seal was upon the envelope.
“ According to the return of Officer Hotcht, to whom the writs of arrest in this case were intrusted, it appears that J. M. Cass, one of the accused, had gone on his annual business tour West, and could not be apprehended. The other accused, Albert Cass, was brought into court and gave bonds in the sum of $500, with McGrloin & Kleinpeter as sureties, for his appearance to answer the charge.
“We learn that Mr. Hickey was indebted to the house of J. M. Cass, from whom he had long purchased his supplies, for a bill of groceries amounting to $109, got in June last, and that this summary proceeding on the part of the accused, was merely a process of collection. We learn, also, that in addition to the deed to be signed by Hickey and wife, the envelope contained a letter from Mr. Holland, advising of the remittance inclosed, and requesting immediate execution of the deed of conveyance likewise transmitted, so that the accused were sufficiently advised, after having broken open the packet, that the money belonged to a stranger who could not, by any logic, however tortuous, be supposed willing or bound to pay Mr. Hickey’s bill. Thus to arrest and appropriate funds belonging to innocent third parties in the course of their transit, should have a conspicuous heading in the category of crime. A fortiori, as the lawyers express it, if persons to whose care letters are addressed may with impunity break them open, to satisfy either their avarice or their curiosity, chaos has come again.
“ We are told that the accused are exempt from penalties of a felonious breaking imposed under the statutory postal regulations of the United States, inasmuch as the packet was received by express, and not through the postoffice.
*221 “The sureties upon the hond of Albert Cass, we are informed, are the legal advisers of his father. The writ for the arrest of the latter will await in the hands of the constable his return, which will probably be hastened by that circumstance, as Mr. Cass is an old merchant of this city. T. B. Howard, Esq., appeared for the prosecution.”
Plaintiff alleging that the whole of the above statement is false, malicious and libelous, institutes this suit against C. A. Weed, the proprietor of the newspaper, and M. P. Bigney, the editor thereof, for one hundred thousand dollars damages.
The case was several times tried by a jury. There was judgment for the plaintiff for $5000. This amount was considered excessive, and a new trial was granted. The second attempt resulted in a mistrial. The third jury gave'a verdict for the plaintiff for $1000, and from this verdict the defendants appealed. Plaintiff answers the appeal, and prays that his damages may be increased to the amount claimed in his petition. Weed has gone into bankruptcy, and his assignee has been made a party to the suit.
Weed avers that the publication complained of is contained in an affidavit in the record of the Second Justice’s Court of New Orleans; that he knew neither party to the proceedings; that in the publication he made no averment as to the truth of the same; that it was made without malice; that it is not libelous, and is within the legitimate province of journalism; that an article explanatory of the same was published in the Sunday’s Times, at the instance of plaintiff, without charge; that this gratuitous publication was demanded and yielded in full satisfaction of any injury plaintiff imagined he had suffered by the previous publication, and condoned any offense, if any had been done Mm, and that his resort now to a claim for damages is in bad faith, seditious, and calls for condemnation from the court.
Bigney avers that he is not interested as proprietor of the New Orleans Times, and that, as employe, he can not be held liable in solido with the proprietor of that paper; he denies the authorship of the article complained of, and says that he can not be held liable therefor. Further answering, he adopts the answer of Weed.
The absence of Weed from the city, and the fact that the article was published during the time he was away, and the fact that Bigney was an employe of Mr. Weed’s, the article having been inserted under Ms instructions, he having control of the columns of the paper.during Weed’s absence, although he never read it, does not release the one or the other, provided the article in question be libelous and improperly published.
The day following the alleged libelous publication, a communication coming from plaintiff’s counsel was published in the Times, in which *222 the whole matter was, according to their views, properly explained to-the public.
There does not seem to have been any agreement between the parties that this publication was to be in full reparation of whatever wrong' may have been done to the plaintiff, and, notwithstanding the publication, defendants’ liability still remained; the communication going to the effect of mitigation of damages.
The charge made by Hickey against the plaintiff was withdrawn.
The question remains, was the publication justified by the facts? The affidavit, which was made before a competent judge, and under which a warrant issued against the plaintiff, reads as follows:
“Edward Hickey being duly sworn, declares that his residence during several years past has been in Texas, but that he is preparing for removal to Louisiana; that his letters have been during one year past, more or less, by his instructions to his correspondents, addressed to him in the care of J. M. Cass, who resides in the city of New Orleans, and therein does business as a grocer; that lately, that is to say, on or about the month of July, 1869, said J. M. Cass, and one Albert Cass, his son, who was employed or occupied with his said father in his store, at 75 Poydras street of said city, did receive a packet or envelope, with inclosures addressed to affiant, and marked and superscribed as follows, to wit: ‘Value $100. Mr. Edward Hickey, care oí J. M. Cass, New Orleans, La.;’ that said packet was duly sealed with sealing wax, and stamped with three seals or impressions on said wax, which impressions were in the following words, to wit: ‘John Holland, manufacturer of gold pens, Cincinnati,’ and were delivered to said J. M. Cass and Albert Cass, containing one hundred dollars in current money, together with a certain blank deed unsigned, purporting that E. Hickey and-Hickey, his wife, did, by such presents, convey to said John Holland, his heirs or assigns, certain tracts of land situated in Missouri for and in consideration of said sum of one hundred dollars. Affiant affirms that such funds belong to and were transmitted, or designed to be transmitted, to affiant by said Holland, in pursuance of a certain agreement of sale between affiant and him. He further declares that J. M. Cass, aided, assisted and abetted by said Albert Cass, his son aforesaid, did, contrary to the statutes, and in violation of the peace and dignity of the State, tear, mutilate and break open such packet, addressed as aforesaid to affiant, and did therefrom extract, take, appropriate, embezzle, steal and carry away said one hundred dollars, in lawful money, and that the same have never been received by affiant, owing to such felonious embezzling and stealing thereof by said J. M. Cass and Albert Cass,
Signed, “EDWARD HICKEY.”
“ Sworn to and subscribed before me, the eleventh day of August, 1869.
“ A. SHELLEY, Second Justice of the Peace.”
*223 Now, this was a document filed in a judicial proceeding, and this document, I do not see any reason why the journal in question, as forming a part of the current of such proceedings in the courts of the day, could not publish. If it had been printed as written, it seems to me that no question of the journal’s responsibility could have arisen. But the affidavit as sworn to, word for word, was not published. The facts are mentioned, but coupled with them are commentaries which, it is contended, constitutes the libel. But this is an error. It is not what may be said of a man’s conduct in a stated case which damages him; it is the conduct of which he is charged. Now, the charges that the plaintiff had opened a letter; had taken therefrom money, had embezzled and stolen it, can not be aggravated by the commentary that “ thus to arrest and appropriate funds belonging to innocent third parties, in the course of their transit, should have a conspicuous heading in the category of crime.” And this, the affidavit out of the way, is the only matter approaching libel which I can find in the publication. It was not a libel to say that they had learned that Hickey was indebted to Cass for goods purchased some months before, and that this was merely a process of collection; nor to say that Mr. Holland’s money had been taken to pay Hickey’s debt, for such was the fact, unless Hickey had made the money his own by signing the deed which the money had been sent to pay, for the land which it conveyed, Nor that the sureties on Albert Cass’s bond were the present plaintiff’s counsel; nor that the return of J. M. Cass to the city, who is said in the article complained of, to be an old merchant of this city.
The eases of Fresca v. Madox, 11 An. 206, and Perrett v. Times, 25 An. 175, do not support the plaintiff’s claim. In the former case the plaintiff was charged in the article with being a pirate, a nursling of crime, with being flushed with booty and bold through previous immunity, as a land and water rat, and a pet of criminal justice during many a day; as a brawny, thick-set, low-browed bandit, and to all appearances
“As mild a mannered man As e’er scuttled ship or cut a throat;”
going far beyond the affidavit, assuming his guilt, and vilifying his character before the public. In the second case a magistrate was accused of the crime of highway robbery, and the relation thereof was published at the instance of entirely irresponsible parties.
In the case at bar the plaintiff was not accused, by the article complained of, of having committed any crime. It was simply related of him that a warrant had issued for his arrest upon an affidavit made before a tribunal of competent jurisdiction, and no expression of belief in his guilt was uttered.
*224 There is, I think, a wide difference between the liberty of the press and the license ot the press. The one should be guaranteed as fully as the other should be watched. Society would be in a truly pitiable state if an editor of a newspaper were allowed to assert that a man was a pirate, or a highway robber, without any provocation, and shield himself from responsibility by asserting that he was not actuated by malice. On the other band, it would be a very bad state of affairs if the public journals of the country were deterred from reporting the fact that a warrant had issued for the arrest of a man charged by affidavit, before a competent court, with embezzlement and theft, and be made to pay a large sum of money because it happened to be said that if the charge was true he who committed it was a criminal.
While I do not think that a newspaper has any right to publish, broad cast, libels against unoffending citizens, I do not think that its editors should be forced to write with manacles upon their hands. I see nothing in the article which the editor had not the right to publish, or any comment thereon which is libelous, and I therefore dissent from the opinion of the court just pronounced.
Justice Wyly concurs in this opinion.